RPD:CMM
F.#2003R02826

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

VALERIE S. AMSTERDAM,

        Defendant.

- - - - - - - - - - - - - - - - X

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
ARREST WARRANT

04 CR 384 (ADS)

EASTERN DISTRICT OF NEW YORK, ss:

        J. RANDOLPH COX, being duly sworn, deposes and says that he is a Criminal Investigator with the United States Attorney's Office for the Eastern District of New York, duly appointed to law and acting as such.

        Upon information and belief, on or about July 18, 2006, within the Eastern District of New York and elsewhere, the defendant VALERIE AMSTERDAM did knowingly and intentionally violate a condition of the terms of her release.

        (Title 18, United States Code, § 3148)

        The source of my information and the grounds for my belief are as follows:[1]

    1.    I am a Criminal Investigator with the Office of the United States Attorney for the Eastern District of New York,

---

    [1]    Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all of the facts and circumstances of which I am aware.

where I have been employed for approximately five years. Prior to this employment, I was employed as a Postal Inspector with the United States Postal Inspection Service, where I worked for a period of approximately fourteen years.

2.   I am one of the case agents assigned to the case of <u>United States v. Valerie S. Amsterdam</u>, 04 CR 384 (ADS). On April 22, 2004, the defendant was arraigned on an indictment and was released pursuant to conditions set by the Honorable Arthur D. Spatt. At that hearing, the Honorable Arthur D. Spatt, United States District Judge, issued a bond order imposing certain conditions for defendant AMSTERDAM's release, including that AMSTERDAM's travel be restricted to the Eastern and Southern Districts of New York and that she surrender her passport to the Pretrial Services Agency by April 23, 2004. <u>See</u> "Order Setting Conditions of Release and Bond," dated April 22, 2004, attached as Attachment A. According to the U.S. Pretrial Services Agency Hearing Summary and Referral form dated April 22, 2004, an additional condition of release was that AMSTERDAM, who at the time had an active criminal defense practice, would be permitted to travel to "other areas for employment, with 48 hours notice to Pretrial." <u>See</u> Hearing Summary and Referral Form dated April 22, 2004, attached as Attachment B.

3.   On April 4, 2005, defendant AMSTERDAM entered a guilty plea to Count One of a superseding indictment. At that

2

time, the security for AMSTERDAM's bond was modified to permit her to satisfy a monetary settlement with the Office of the United States Attorney. All travel restrictions remained in effect. See Transcript of Plea Allocution dated April 4, 2005 at p. 43-45, attached as Attachment C.

4.   On August 4, 2005, AMSTERDAM sought a modification of the conditions of her release to permit AMSTERDAM to travel to Kenya on September 3, 2005. That request was denied by the Honorable Arthur D. Spatt on August 4, 2005.

5.   On December 12, 2005, AMSTERDAM again moved this Court to modify the conditions of her release to permit her to travel to Ethiopia in January 2006. See Letter of Elkan Abramowitz, dated December 12, 2005, attached as Attachment D.

6.   On December 14, 2005, the Honorable Arthur D. Spatt, after receiving AMSTERDAM's "absolute word to my children on their very lives that I will be here," and promise "I will not let you down, Your Honor," granted the request and modified the travel restriction to allow AMSTERDAM to travel to Ethiopia for eight days in January 2006. See Transcript of Status Conference dated December 14, 2005, at p. 27-30, attached as Attachment E. On December 23, 2005, Richard Albert wrote this Court asking it to confirm that AMSTERDAM would be permitted to travel to Ethiopia. The Court confirmed that request in writing on December 27, 2005.

7.     United States Pretrial Services Officer Donna
Mackey provided AMSTERDAM's passport to Amy Tully, Esq., an
attorney for AMSTERDAM on or about December 28, 2005 with a cover
letter indicating that the passport must be returned by January
25, 2006.  See Pretrial Services Letter dated December 28, 2005,
attached as Attachment F.  Subsequently, Pretrial Services
received a receipt for AMSTERDAM's passport, signed by Amy Tully,
dated December 29, 2005, which receipt also contains a
handwritten notation from Ms. Mackey again indicating that
AMSTERDAM must return the passport to Pretrial Services by
January 25, 2006.  See Receipt dated December 29, 2005, attached
as Attachment G.  According to an office manager who reviewed
AMSTERDAM's Pretrial Services file, there is no record that
AMSTERDAM's passport was ever returned.

8.     On June 30, 2006, the Honorable Arthur D. Spatt
sentenced AMSTERDAM to a term of imprisonment of six months and
ordered her to surrender on January 2, 2007.  See Transcript of
Sentencing Hearing dated June 30, 2006 at p. 99, attached as
Attachment H.  The Court did not modify AMSTERDAM's release
conditions during the sentencing hearing.

9.     On July 19, 2006, a representative of the
Department of Homeland Security ("DHS") notified me that, on July
18, 2006, AMSTERDAM traveled on a Continental Airlines flight
from Newark, New Jersey to Vancouver, British Columbia, Canada.

4

Based upon my conversation with a representative for DHS, AMSTERDAM used the same passport for this flight that she used to travel to Ethiopia. Based upon conversations with airline personnel, I learned that (a) AMSTERDAM booked her ticket on July 7, 2006, (b) that AMSTERDAM's parents, Gloria Szymanski and Jack Bowen, were also on the manifest for the flight, and (c) AMSTERDAM has booked a return flight from San Francisco, California, to Newark, New Jersey, arriving on or about July 28, 2006.

10. I have spoken with a representative of the United States Pretrial Services Agency as well as the Assistant United States Attorneys assigned to this case. None of these parties were aware of an application to modify AMSTERDAM's bail conditions to allow her to travel following her January 2006 trip to Ethiopia.

11. Based upon information provided by government witness and former AMSTERDAM client Cary Cimino, AMSTERDAM twice traveled with Cimino in violation of the conditions of Cimino's pretrial release restricting his travel to the Eastern and Southern Districts of New York. Specifically, AMSTERDAM traveled with family members and Cimino to Canyon Ranch in the Berkshire Mountains from on or about November 20 through November 25, 2001 and, on a later date, to Ticonderoga, New York. I have reviewed records obtained from Canyon Ranch, as well as AMSTERDAM's

American Express Account, which confirm that Amsterdam and Cimino were both guests at Canyon Ranch during that time period.

WHEREFORE, your deponent respectfully requests that a warrant be issued for the defendant so that she may be dealt with according to law. Your deponent further respectfully requests that this application and the warrant remain under seal until further order of the Court, except that copies of the warrant may be made available to law enforcement officers as necessary for the execution of the warrant.

Dated: Central Islip, NY
      July 21, 2006

J. Randolph Cox
Criminal Investigator

The Honorable Arthur D. Spatt
United States District Judge
7/21/06

$A$

*United States District Court*
## EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

**ORDER SETTING CONDITIONS
OF RELEASE AND BOND**

VALERIE AMSTERDAM
v.

Case No.: OY cr 384-(ADS)

_____
Defendant

### RELEASE ORDER

It is hereby ORDERED that the above-named defendant be released as follows, **subject to the Standard Conditions of Bond on the reverse and:**

[ ] Upon **Personal Recognizance Bond** on his/her promise to appear at all scheduled proceedings as required, or

[ ] Upon **Unsecured Bond** executed by defendant in the amount of $ _____, or

[✓] Upon **Secured Appearance Bond** as provided herein.

#### Additional Conditions of Release

Upon finding that release under the standard conditions on the reverse will not by themselves reasonably assure the appearance of the defendant and the safety of other persons and the community, IT IS FURTHER ORDERED that the defendant is subject to the following additional conditions of release:

[✓] 1.  The defendant must remain in and may not leave the following areas without Court permission: EDNY + SDNY

[ ] 2.  The defendant shall avoid all contact and not associate with any of the following persons or entities: _____

[ ] 3.  The defendant shall avoid and not go to any of the following locations: _____

[✓] 4.  The defendant shall surrender any and all passports to the U.S. Pretrial Services Agency by 5/25/04 and shall not apply for any other passport.

[✓] 5.  Defendant is placed under the express supervision of the Pretrial Services Agency, subject to the Special Conditions on the reverse, if applicable, and

    [ ] is subject to random visits by a Pretrial Services officer at defendant's home and/or place of work;

    [✓] must report to that agency ( ) in person _____ times per _____ and/or (✓) by telephone _____ times per _____  As required by PTS

    [ ] is subject to home detention with electronic monitoring with the following conditions: _____

    [ ] must undergo [ ] random drug testing [ ] evaluation and/or [ ] treatment for: [ ] substance abuse [ ] alcoholism [ ] mental health problems.

    [ ] must pay the cost of treatment and/or electronic monitoring by with personal funds and/or insurance.

[✓] 6.  Other Conditions: Drug test forthwith

### APPEARANCE BOND

The undersigned defendant and sureties jointly and severally acknowledge that I/we and my/our personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $ 250,000. The undersigned agree(s) that this obligation is secured with his/her/their interest in the following property ("Collateral") which he/she/they represent is/are free and clear of liens except as otherwise indicated:

[ ] cash deposited in the Registry of the Court the sum of $ _____

[✓] premises located at: 55 Cobbetts Lane Shatford owned by Valerie Amsterdam

[ ] I/We also agree to execute a confession of judgment in form approved by the U.S. Attorney which shall be duly filed with the proper local and state authorities on or before _____

[✓] Other Conditions: ASE Investment Stock to be held in escrow

MARK Lemle Amsterdam Address: 1220 Park Ave, NY, NY
_____
Surety

_____ Address: _____
Surety

_____ Address: _____
Surety

The Court has advised the defendant of the conditions of release per 18:3142(h)(1) and (h)(2). This bond is conditioned upon the appearance of the defendant and is subject to the Standard Conditions of Bond set forth on the reverse. If the defendant fails to appear as ordered or notified, or any other condition of this bond is not met, this bond shall be due forthwith.

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. **I am aware of the penalties and sanctions set forth on the reverse of this form.**

_____
Signature of Defendant

Release of the Defendant is hereby ordered on ___/___/____ ,20 04

_____, USDJ

Distribution:   White-Original    Canary - Courtroom Deputy    Pink - Pretrial Services    Goldenrod - Defendant

𝓑

# U.S. Pretrial Services Agency
## Eastern District of New York

## Hearing Summary and Referral Form

Defendant's Name: AMSTERDAM, VALERIE DOB 2/26/52 Date: 4/22/04

Date of Arrest: 4/22/04 Time of Arrest: 1130 Dkt # 04 CR 384

Charge: Obstruction of Justice/Witness Tampering Magistrate: Judge Spatt

Assistant US Attorney: Gary Brown Defense Counsel: Jonathan Sack

AUSA Recommendation: 500,000 secured bond, with drug testing.

---

**Initial Appearance** Time: 1600

        Outcome:
        [ ] Temporary Order of Detention
        Next Court Appearance (Date and Time)_____
        [ ] Permanent Order of Detention
        [X] Released (See Conditions Below)

Courtroom Duty Officer AEB

**Detention Hearing Outcome**

        Date:_____ Time: _____ Magistrate: _____
        [ ] Temporary Order of Detention
        [ ] Permanent Order of Detention
        [ ] Released (See Conditions Below)

Courtroom Duty Officer_____

**Bail Review Hearing**

        Date:_____ Time: _____ Magistrate: _____
        [ ] Detained
        [ ] Released (See Conditions Below)
        [ ] Previously Released, Conditions Modified (See Conditions Below)

Courtroom Duty Officer_____

**Release Conditions**

and 100,000 investment account.

Bail: 250,000 secured by Shelter Island property + co-signed by ex-husband

Passport Instructions: Surrender passport Travel Restrictions: EDNY + SDNY - and other areas for employment, with 48 hours notice Pretr

Pretrial Services Supervision:
        [ ] None
        [X] Telephone_____ Times Weekly or [X] as directed (Telephone devices, blocks and other services to be removed from home telephone)
        [ ] Report in Person _____ Times Weekly or [ ] as directed
        [X] Drug Testing/Treatment/Evaluation ( Circle One) · 1 – 1 DRUG TEST
        [ ] Electronic Monitoring:
          [ ] Full 24-hour home detention
          Court-authorized timeouts:
          (e.g. work, religion) _____
        [ ] Defendant To Pay Costs Of Monitoring or Treatment (including self-pay and/or insurance)

---

**Instructions To Defendant: Bring this form immediately to Room 500. If it is after 5:00 PM, follow instructions of Pretrial Officer in the Courtroom.**

Case Officer AEB

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
               :

UNITED STATES OF AMERICA

                        CR-04-0384 (ADS)

      -against-        :

                       United States Courthouse
                       Central Islip, New York

VALERIE AMSTERDAM,

               :

    Defendant.

                       April 4, 2005
- - - - - - - - - - - - - - X  3:30 p.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ARTHUR D. SPATT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:        ROSLYNN R. MAUSKOPF
                       United States Attorney
                       100 Federal Plaza
                       Central Islip, New York 11722
                       BY:  CYNTHIA MONACO
                            ALLEN BODE
                       Assistant United States Attorneys

For the Defendant:     MORVILLO ABRAMOWITZ GRAND

IASON & SILBERBERG, P.C.

565 Fifth Avenue

New York, New York 10017

BY:   ELKAN ABRAMOWITZ, ESQ

RICHARD F. ALBERT, ESQ

AMY TULLY, ESQ.


Court Reporter:     Perry Auerbach

100 Federal Plaza

Central Islip, New York 11722

(631) 712-6103


Proceedings recorded by mechanical stenography.

Transcript produced by computer.

1          THE CLERK:  Criminal cause for plea, United

2    States of America against Valerie Amsterdam under criminal

3    number 04-384.

4          Counsel please state your appearances.

5          THE COURT:  Please approach and put your

6    appearance on the record.

7          MS. MONACO:  Cynthia Monaco and Allen Bode for

8    the government.  Good afternoon.

9          MR. ABRAMOWITZ:  Elkan Abramowitz, Richard

10   Albert and Amy Tully for the defendant.

11         Good afternoon.

12         THE COURT:  I didn't get all the names.

13         MR. ABRAMOWITZ:  Elkan Abramowitz, Richard

14   Albert and Amy Tully.

15         THE COURT:  Who is going to speak on behalf of

16   the government?

17         MS. MONACO:  I will, your Honor.

18         THE COURT:  What's happening?

19         MS. MONACO:  Your Honor, we've reached a plea

20   agreement, a copy of which, a draft copy of which, which

21   is identical to the original that we have with us was

22   provided to your chambers last week and it's my

23   understanding that Ms. Amsterdam is prepared to withdraw

24   her plea of not guilty and enter a plea of guilty pursuant

25   to that agreement.

1         MR. ABRAMOWITZ: To Count One of the indictment.

2         THE COURT: The draft that you gave me is the

3 plea agreement?

4         MS. MONACO: Yes, your Honor, but we have --

5 yes, your Honor, the one that you were given today, the

6 signed copy, that is the plea agreement.

7         THE COURT: No. I mean the one that you dropped

8 off on Friday, is that similar to this?

9         MS. MONACO: It is identical, except the word

10 "declaration" was changed to the word "affidavit" in the

11 plea agreement, otherwise it's identical.

12         THE COURT: The affidavit of Valerie S.

13 Amsterdam is the same also.

14         MS. MONACO: That's correct, your Honor.

15         THE COURT: Is that correct, Mr. Abramowitz.

16         MR. ABRAMOWITZ: That's correct, your Honor.

17         THE COURT: You are Valerie S. Amsterdam?

18         THE DEFENDANT: Yes, your Honor.

19         THE COURT: Ms. Amsterdam, your attorney advises

20 me that you wish to plead guilty to Count One of the

21 indictment, the Superseding Indictment?

22         THE DEFENDANT: That is correct, your Honor.

23         THE COURT: Count One of the indictment charges

24 that in or about and between 2003 and November 2000 --

25 June 2003 and November 2003, within this district, you

1   together with another attorney did knowingly, willfully

2   and intentionally conspire to defraud the United States

3   and an agency of the United States, namely, the United

4   States District Court for the Eastern District of New

5   York, in that you accepted a check from a person called

6   John Doe for $10,000 for the purpose of representing a

7   defendant named as defendant one in the indictment.  You

8   submitted an application to the Court requesting that you

9   be appointed to represent that defendant under the

10  Criminal Justice Act, and on or about November 20th, 2003,

11  you and another, the attorney who had been appointed as

12  CJA counsel advised a United States District Judge that

13  you were not being paid to represent that defendant but

14  were working on the case pro bono when in fact you had

15  been made.

16              Do you understand the nature of that charge?

17              THE DEFENDANT:  I do, your Honor.

18              THE COURT:  Ms. Amsterdam, this plea is a

19  serious decision.  And I must be certain that you make it

20  understanding your rights and the consequences of your

21  plea.  I'm going to ask you some questions and then

22  explain certain rights to you.

23              I want your answers to be under oath.

24              Place swear in the defendant.

25              (Defendant sworn by the clerk of the court.)

1    THE COURT: Ms. Amsterdam, you understand that

2    having been sworn to tell the truth, you must tell the

3    truth?

4    THE DEFENDANT: I understand that, your Honor.

5    THE COURT: If you were to deliberately lie in

6    response to any question I ask you, you can face further

7    criminal charges for perjury, do you understand that?

8    THE DEFENDANT: Yes, sir.

9    THE COURT: If I say anything that you do not

10   understand, or if you need me to repeat anything, you have

11   only to ask. It is important that you understand

12   everything that goes on in this proceeding. Is that

13   clear?

14   THE DEFENDANT: Yes, your Honor.

15   THE COURT: How old are you?

16   THE DEFENDANT: 53 years old.

17   THE COURT: How far did you get with your

18   education?

19   THE DEFENDANT: I graduated NYU law school.

20   THE COURT: Ms. Amsterdam, I must be certain

21   that whatever decisions you make today you make with a

22   clear head. So I'm going to ask you some questions about

23   your health. Are you presently or have you recently been

24   under the care of a doctor or a psychiatrist for any

25   reason?

1    THE DEFENDANT:  I do see a psychiatrist.

2    THE COURT:  How often do you see a psychiatrist?

3    THE DEFENDANT:  At least once a week, sometimes

4  twice.

5    THE COURT:  Any other physicians?

6    THE DEFENDANT:  No, your Honor, just routine

7  internist.  I have no medical problems.

8    THE COURT:  And does this psychiatrist prescribe

9  any medication for you?

.10    THE DEFENDANT:  I have taken antidepressants and

11  anti-anxiety medication under the direction of a

12  physician.

13    THE COURT:  Okay.  In the past 24 hours have you

14  taken any pills or drugs or medicine?

15    THE DEFENDANT:  Last 24 hours I've only taken

16  the prescribed 20 milligrams of Prozac.

17    THE COURT:  But you've seen that?

18    THE DEFENDANT:  I have, your Honor.

19    THE COURT:  When did you take the Prozac?

20    THE DEFENDANT:  This morning as my doctor

21  instructs me.

22    THE COURT:  What time this morning?

23    THE DEFENDANT:  When I woke up, 7 a.m.

24    THE COURT:  And does that have any affect on you

25  other than the antidepressant effect, does it make you

1    dizzy, nauseous, sick?

2              THE DEFENDANT:  There are no side effects to me,

3    your Honor.

4              THE COURT:  Have you taken any other pills or

5    drugs or medicine or alcoholic beverages of any kind in

6    the last 24 hours?

7              THE DEFENDANT:  No, sir.

8              THE COURT:  Is your mind clear as you stand here

9    today?

10             THE DEFENDANT:  It is, your Honor.

11             THE COURT:  Are you going to be speaking for the

12   defense, Mr. Abramowitz.

13             MR. ABRAMOWITZ:  Yes, your Honor.

14             THE COURT:  Mr. Abramowitz, have you discussed

15   the question of this guilty plea with your client?

16             MR. ABRAMOWITZ:  Yes, your Honor.

17             THE COURT:  In your view does she understand the

18   rights that she would be waiving by pleading guilty?

19             MR. ABRAMOWITZ:  Yes, your Honor.

20             THE COURT:  Do you have any question as to her

21   competency to proceed today?

22             MR. ABRAMOWITZ:  No, your Honor.

23             THE COURT:  Ms. Amsterdam, are you satisfied

24   with the assistance that your attorneys --

25             THE DEFENDANT:  I am, your Honor.

1    THE COURT: (Continuing.) -- three of whom are

2 here, have given you thus far in this matter?

3    THE DEFENDANT: Yes, sir.

4    THE COURT: Do you feel that you need any more

5 time to discuss with them the question of this guilty

6 plea?

7    THE DEFENDANT: No, your Honor.

8    THE COURT: Do you wish me to read the charge

9 again verbatim, Mr. Abramowitz?

10    MR. ABRAMOWITZ: No, your Honor.

11    We would waive the public reading of it.

12    THE COURT: Do you understand, Ms. Amsterdam,

13 that you have a right to continue to plead not guilty to

14 this charge, and go to trial?

15    Do you understand that?

16    THE DEFENDANT: Yes, sir.

17    THE COURT: If you plead guilty to this charge,

18 you will give up some very valuable rights. Please listen

19 to the rights that you will give up if you plead guilty

20 and I know that you know what the rights are, but I'm

21 going to tell you the rights again.

22    Do you understand?

23    THE DEFENDANT: Yes, sir.

24    THE COURT: You have a right under the

25 Constitution and laws of the United States to a speedy and

1 public trial before a jury with the assistance of your

2 attorney. Do you understand that?

3         THE DEFENDANT: Yes, your Honor.

4         THE COURT: At the trial, you would be presumed

5 to be innocent. You would not have to prove that you were

6 innocent. This is because under our system of law, it is

7 the government that must come forward with proof that

8 establishes beyond a reasonable doubt that you are guilty

9 of this crime.

10         If the government failed to meet this burden of

11 proof, the jury would have the duty to find you not

12 guilty.

13         Do you understand that?

14         THE DEFENDANT: Yes, sir.

15         THE COURT: Further, at the trial, witnesses for

16 the government would have to come here to court and

17 testify in your presence, in this courtroom. Your lawyer

18 would have the right to cross-examine these witnesses. He

19 could raise legal objections to the evidence the

20 government sought to offer against you. He could offer

21 evidence in your behalf if you thought there was some

22 evidence that might help you in this case. Do you

23 understand that?

24         THE DEFENDANT: Yes, sir.

25         THE COURT: Further, at the trial you would have

1  the right to testify in your own behalf if you wished to

2  do so.  On the other hand, you could not be forced to be a

3  witness at your trial.  This is because under the

4  Constitution of the United States no person can be

5  compelled to be a witness against herself.

6  So if you wish to go to trial but chose not to

7  testify, I would instruct the jury that they could not

8  hold that against you.  Do you understand that fundamental

9  right?

10  THE DEFENDANT:  Yes, sir.

11  THE COURT:  If instead of going to trial you

12  plead guilty to this crime, and if I accept your guilty

13  plea, you will be giving up your right to a trial and all

14  the other rights that I have just discussed.  There will

15  be no trial in this case.  There will be no appeal on the

16  question of whether you did or did not commit this crime.

17  The only thing that you could appeal would be if you

18  thought that I did not properly follow the law in

19  sentencing you.  Unless there is a waiver of appeal -- do

20  you understand what a waiver of appeal is?

21  THE DEFENDANT:  I do, your Honor.

22  THE COURT:  And in your plea agreement in this

23  case, there is a waiver of the right to appeal if the

24  Court "imposes a term of imprisonment of six months or

25  below."

1    THE DEFENDANT:  Six months or above there would
2  be a right to appeal.
3    THE COURT:  So that if the Court imposes a term
4  of imprisonment of six months or below, you can have no
5  right to appeal?
6    THE DEFENDANT:  No.
7    THE COURT:  For anything?
8    THE DEFENDANT:  That's correct.
9    THE COURT:  But if the Court imposes a term of
10  imprisonment of seven months or higher, you would have a
11  right to appeal with respect to the sentence.  Do you
12  understand that?
13    THE DEFENDANT:  Understood, your Honor.
14    THE COURT:  If you do plead guilty, I will have
15  to ask you certain questions about what you did in order
16  to satisfy myself that you are guilty of this charge.  You
17  will have to answer my questions and acknowledge your
18  guilt.  This means you'll be giving up your right not to
19  incriminate yourself.
20    Do you understand that?
21    THE DEFENDANT:  Yes, your Honor.
22    THE COURT:  Ms. Amsterdam, are you willing to
23  give up your right to a trial and the other rights that I
24  have just discussed with you?
25    THE DEFENDANT:  Yes, your Honor.

1    THE COURT:  Ms. Monaco, with respect to the plea

2    agreement, I have a copy in front of me.  And I want to go

3    over some of these provision on the record.

4         This plea agreement in addition to setting forth

5    that the defendant will plead guilty to Count One, sets

6    forth the maximum and minimum and the other portions of

7    the sentence.

8         The plea agreement further describes the fact

9    that the sentencing guidelines are not mandatory any

10   longer, and since the case of United States against

11   Booker, the Court must seriously consider the guidelines

12   but they are not mandatory.  This is very important.  Do

13   you understand that?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Ms. Amsterdam?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  This is not pre-Booker, where the

18   Court had to go with the guidelines.

19        THE DEFENDANT:  I understand, your Honor.

20        THE COURT:  Unless there were downward

21   departures or upward departures, and there had been very

22   good reasons for that.

23        You understand that?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  No longer.

1          The Court must consider the guidelines,

2    seriously consider the guidelines, but is not bound by the

3    guidelines.

4          Do you understand that?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  There's also a very important

7    sentence in this plea agreement, in my opinion it's very

8    important.  Paragraph two, after explaining the fact that

9    the guidelines are no longer mandatory, this is what the

10   plea agreement says.  "The office," that's the U.S.

11   Attorney's office, "will advise the Court and the

12   probation department of information relevant to

13   sentencing, including all criminal activity engaged in by

14   the defendant, and such information may be used by the

15   Court in determining the defendant's sentence."

16          Do you understand what that means?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  That means that if evidence is set

19   forth before the Court with regard to the other counts in

20   the indictment, the Superseding Indictment, the Court can

21   consider that.

22          Do you understand that?

23          THE DEFENDANT:  I do, your Honor.

24          THE COURT:  That is a very serious situation.  I

25   want to make sure that you understand that, because I'm

1  not bound by zero to six months any longer under Booker.

2  Do you understand that?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And I can consider all the other

5  evidence, if I think that it's viable and the government

6  could prove it, in rendering a sentence.  Do you

7  understand that?

8          THE DEFENDANT:  Yes, your Honor.

9          MR. ABRAMOWITZ:  Your Honor, may I interrupt for

10 one minute?

11         THE COURT:  Yes.

12         MR. ABRAMOWITZ:  If that were to be the case, I

13 want the record to be clear that we would contest the

14 factual allegations.

15         THE COURT:  We have to have a Fatico hearing.

16         MR. ABRAMOWITZ:  That's correct.  I just want

17 the record to be clear on that.

18         THE COURT:  Under Booker.  Not Blakely.

19         MR. ABRAMOWITZ:  I understand.

20         THE COURT:  Not Blakely.  Under Booker.  I can

21 decide whether that evidence should be considered, and

22 it's not beyond a reasonable doubt, and it's not a jury.

23         MR. ABRAMOWITZ:  I understand.

24         THE COURT:  You understand?  That's the reason

25 that they declared the guidelines unconstitutional to the

extent they did. But in doing so, strangely, as it worked out, the Court now can do what it did before, in determining the enhancements.

You know that, right?

MR. ABRAMOWITZ: I do.

THE COURT: Have you told that to Ms. Amsterdam?

MR. ABRAMOWITZ: I believe we've discussed that, yes.

THE COURT: So I want to make it very clear, that I will seriously consider the guidelines, but I'm not bound by them, and if I think the government can prove and has proven in a Fatico hearing the other criminal activity, I can consider that.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Continuing with this plea agreement.

MR. ABRAMOWITZ: May I have a minute, your Honor?

THE COURT: Sure.

MR. ABRAMOWITZ: Your Honor, I think we need to take a recess. I need to talk to the government.

THE COURT: Sure. We'll take a five-minute recess.

(Recess taken at this point.)

(After recess.)

1          THE COURT:  Have you had an opportunity to

2     discuss what I've just mentioned, referring to the other

3     criminal activity with your attorney?

4          THE DEFENDANT:  Yes, your Honor.

5          MR. ABRAMOWITZ:  Yes, we have, and I think

6     Ms. Monaco has a statement.

7          THE COURT:  Yes.

8          MS. MONACO:  Your Honor, a concern was expressed

9     by Mr. Abramowitz that at a Fatico hearing, the government

10    might attempt to introduce into evidence the affidavit of

11    Ms. Amsterdam which is part of this plea agreement and

12    incorporated into this plea agreement.  And the government

13    would take the position that that would be inconsistent

14    with the terms of this plea agreement to use

15    Ms. Amsterdam's statement in the affidavit against her at

16    a Fatico hearing unless, of course, Ms. Amsterdam took the

17    stand and testified.

18         THE COURT:  Is that your understanding of the

19    agreement with the government?

20         MR. ABRAMOWITZ:  Yes, your Honor.

21         THE COURT:  That's important.  Because I was

22    going to get to this affidavit.  It's not exactly the

23    usual thing in a plea agreement.  Okay.

24         So the agreement between the government and the

25    defendant is that if there is a Fatico hearing with regard

1   to other criminal activity, other relevant conduct or

2   criminal activity, the government will not use the

3   affidavit of Ms. Amsterdam as direct evidence, but only

4   if -- to cross-examine, if Ms. Amsterdam takes the stand.

5           MR. ABRAMOWITZ:  That's correct.

6           THE COURT:  Okay.

7           Then I went over with you already that you have

8   waived your right to appeal, that's paragraph four, if the

9   sentence is six months or below?

10          THE DEFENDANT:  That's correct, your Honor.

11          THE COURT:  Okay.

12          THE DEFENDANT:  I understand.

13          THE COURT:  And further -- I'm just going over

14  some of the highlights.  I want to make sure that you

15  understand them.  Further on into paragraph four it

16  states -- I suppose this is somewhat changed by the oral

17  agreement that you just discussed.  It says on page four,

18  about one-third of the way down, "the defendant further

19  agrees that her affidavit encaptioned "declaration of

20  Valerie S. Amsterdam" -- is that the change that you were

21  talking about?

22          MS. MONACO:  That was the one changed.

23          THE COURT:  "And attached hereto and

24  incorporated into this agreement is her own statement and

25  is admissible in evidence against her in any such

1  prosecution."

2        Now, that refers to the sentence before that,

3  that does not refer to a Fatico hearing.

4        MR. ABRAMOWITZ:  That's correct.

5        THE COURT:  That refers to the fact that should

6  you violate any provision of this agreement, you may be

7  prosecuted with respect to the conduct set forth in Counts

8  Two through 24 of the second Superseding Indictment, and

9  at that point they can use your affidavit?

10        THE DEFENDANT:  That's what I understand.

11        THE COURT:  But not in a Fatico hearing unless

12  you take the stand.

13        Is that your understanding?

14        THE DEFENDANT:  Yes, sir.

15        THE COURT:  Is that clear?

16        THE DEFENDANT:  Yes, sir.

17        THE COURT:  I'm going over what I consider the

18  highlights of this plea agreement, and paragraph five says

19  that no further criminal charges will be brought against

20  you for the conduct set forth in the second Superseding

21  Indictment, and the government will move to dismiss the

22  remaining counts at the time of sentencing.

23        Also, the government says in 5-B they will,

24  "take no position concerning where within the guideline

25  range determined by the Court the sentence should fall."

1    Do you understand that?

2    THE DEFENDANT: Yes, sir.

3    THE COURT: The government also says in

4  subdivision C, they will not seek a sentence above the

5  high end of the guidelines range set forth in paragraph

6  two. And that's the zero to six months.

7    Do you understand that?

8    THE DEFENDANT: Yes, sir.

9    THE COURT: So they won't ask for more time.

10    THE DEFENDANT: I understand.

11    THE COURT: That doesn't bind me. Do you

12  understand that?

13    THE DEFENDANT: I do understand that.

14    THE COURT: Of course they say if there's other

15  information that's relevant to sentencing, that becomes

16  known to the office after the date of this agreement, they

17  will not be bound. I don't know what that means, but I

18  assume it means if some terrible -- if you did some

19  terrible things that they find out afterwards that they

20  didn't know about, nothing involved in this second

21  Superseding Indictment.

22    THE DEFENDANT: I understand.

23    THE COURT: In paragraph six, it says the

24  defendant agrees to permanently and irrevocably resign

25  from the bar of the Eastern District of New York, the New

1    York State bar and any other federal or state bar to which

2    she is admitted to practice law, and agrees to submit such

3    resignations within five business days after the entry of

4    plea pursuant to this agreement.

5            Are you all right?

6            THE DEFENDANT: I am. I understand, your Honor.

7            THE COURT: You understand that?

8            THE DEFENDANT: Yes, sir.

9            THE COURT: And you further agree not to

10   practice law in any capacity, not to accept employment,

11   either compensated or uncompensated, in the legal field,

12   including employment as a law secretary, law clerk, legal

13   paralegal or consultant to a legal practice.

14           Do you understand that? That means you can't

15   have any legal related job.

16           THE DEFENDANT: Yes, your Honor. I understand

17   that.

18           THE COURT: And you also agree never to apply

19   for reinstatement or admission to the bar after this, do

20   you understand that?

21           THE DEFENDANT: I do.

22           THE COURT: Serious matters. You understand

23   that?

24           THE DEFENDANT: I do.

25           THE COURT: Further, in paragraph seven, the

1   defendant agrees to forfeit to the use and benefit of the

2   United States all of her right, title and interest in the

3   sum of $374,000, and her law license.

4         Do you understand that?

5         THE DEFENDANT:  I do.

6         THE COURT:  Then it refers to the forfeiture

7   provisions, which I'm not going to go into.

8         Paragraph 12, which is the usual language, says

9   this agreement does not bind any federal, state or local

10   prosecuting authority other than the U.S. Attorney's

11   Office for the Eastern District, and does not prohibit the

12   office from initiating or prosecuting any civil or

13   administrative proceedings directly or indirectly

14   involving the defendant.

15         Do you understand that?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Then the agreement goes on to say

18   that no promises or agreements or anything else that was

19   entered into -- discussed orally, rather -- is of any

20   effect unless it's in this writing, signed by all parties.

21   Do you understand this?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Now, you read this agreement, did

24   you?

25         THE DEFENDANT:  I did.

1          THE COURT:  And Mr. Abramowitz and his

2   colleagues went over it with you?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And you understand everything that's

5   in this agreement?

6          THE DEFENDANT:  I do, your Honor.

7          THE COURT:  And if there's anything that you

8   don't understand, ask me and I'll try to explain it.

9          THE DEFENDANT:  Thank you, sir.  It won't be

10  necessary.

11         THE COURT:  And did you indicate your

12  understanding of the terms of this agreement?

13         THE DEFENDANT:  I did, your Honor.

14         THE COURT:  And your consent to be bound by the

15  agreement by signing it?

16         THE DEFENDANT:  Correct, your Honor.

17         THE COURT:  And having your attorney sign it?

18         THE DEFENDANT:  That's correct, your Honor.

19         THE COURT:  Was there any other promise made to

20  you on behalf of the government that was not in this

21  written agreement?

22         THE DEFENDANT:  No, your Honor.

23         THE COURT:  Now, attached to the written

24  agreement --

25         MR. ABRAMOWITZ:  Your Honor?

1     THE COURT:  Yes?

2          MR. ABRAMOWITZ:  The affidavit that's attached

3     was not intended to be made public unless there was a

4     violation of the agreement.

5          THE COURT:  Is that right?

6          I have no problem with that if that's right.

7          MS. MONACO:  Your Honor, I have no problem with

8     the Court not going into the specifics of the affidavit.

9     I would just like, maybe, perhaps a record made of how

10    many pages it is and that Ms. Amsterdam did knowingly and

11    intentionally sign that.

12         THE DEFENDANT:  I understand.

13         THE COURT:  The affidavit that I referred to

14    which will be annexed to the plea agreement is four pages,

15    but the fourth page is -- just the top of the fourth page,

16    and I don't know when it was executed, because the copy I

17    have was not executed.

18         MR. ABRAMOWITZ:  It was executed this afternoon,

19    your Honor.

20         MR. BODE:  I'm a notary public, your Honor, and

21    I notarized Ms. Amsterdam's signature.

22         THE COURT:  Is that the affidavit?

23         THE DEFENDANT:  Yes.

24         THE COURT:  What's in there is the truth,

25    correct?

1          THE DEFENDANT: Yes, your Honor.

2          THE COURT: Ms. Amsterdam, I must be certain

3    that you understand the consequences of pleading guilty to

4    this charge which is Count One. It has a maximum term of

5    imprisonment of five years or 60 months. As you know,

6    everything is in months, correct?

7          THE DEFENDANT: Correct, your Honor.

8          THE COURT: Minimum term of imprisonment zero.

9    So the term of incarceration here is zero to 60 months

10   under the statute.

11         Do you understand that?

12         THE DEFENDANT: Understood, your Honor.

13         THE COURT: We have already discussed what it is

14   under the guidelines, zero to six months. You understand

15   that?

16         THE DEFENDANT: I understand, your Honor.

17         THE COURT: And then there's a maximum term of

18   supervised release. You know what supervised release is?

19         THE DEFENDANT: I do, your Honor.

20         THE COURT: And the maximum term of supervised

21   release is three years to follow any term of imprisonment.

22   If you violate any condition of supervised release, such

23   as don't report to the probation officer, move without

24   telling people, change your occupation, other things, you

25   can be sentenced up to an additional two years or

1   24 months without credit for pre-release imprisonment or

2   time previously served on post-release supervision.  Do

3   you understand that?

4           THE DEFENDANT:  Yes, sir.

5           THE COURT:  Also, there's a fine, the maximum

6   fine is the greatest of either one of three items;

7   $250,000 or two times the gross pecuniary gain, if there

8   is any, or, three, the third item is two times the gross

9   pecuniary loss to persons other than the defendant

10  resulting from the offense.

11          Do you understand that?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  Restitution is not appropriate.

14  There's a hundred dollar mandatory special assessment.  Do

15  you understand that?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  And there's forfeiture as provided

18  in the plea agreement.  Now, what is this forfeiture

19  there?  Did I mention it before?  I did.

20          MS. MONACO:  You did, your Honor.

21          THE COURT:  We have a stipulation of settlement

22  and decree of forfeiture, did you read this?

23          THE DEFENDANT:  I did and I signed it.

24          THE COURT:  Did you understand what's in there?

25          THE DEFENDANT:  Yes.

1    THE COURT: Did Mr. Abramowitz go over it with

2    you?

3    THE DEFENDANT: Yes, your Honor.

4    THE COURT: When I say Mr. Abramowitz, I'm not

5    leaving out your other counsel, they may have done the

6    same thing. Right?

7    THE DEFENDANT: Mr. Albert went over it with me

8    also.

9    THE COURT: Okay.

10    And the forfeited items seem to be, is that

11    correct, the sum of $374,000 and the law license. Those

12    are the two forfeited objects?

13    MR. ABRAMOWITZ: That's correct, your Honor.

14    THE COURT: And the forfeiture agreement

15    provides for the payment of the money at the time of the

16    closing on sale of real property.

17    Is that right?

18    THE DEFENDANT: Yes, sir.

19    THE COURT: And you've gone over the other terms

20    of this forfeiture agreement?

21    THE DEFENDANT: Yes, sir.

22    THE COURT: Do you understand them?

23    THE DEFENDANT: I do understand them, yes.

24    THE COURT: Did you indicate your understanding

25    and consent to be bound by signing the agreement?

1    THE DEFENDANT:  I did sign the agreement, yes.

2    THE COURT:  And it was notarized, correct?

3    THE DEFENDANT:  Correct.

4    THE COURT:  So you swore to its contents,

5    correct?

6    THE DEFENDANT:  I swore to the settlement

7    decree, yes.

8    THE COURT:  I'm going to sign this forfeiture

9    agreement.

10    Now, Ms. Amsterdam, do you understand in

11    sentencing you I will have to consider the federal

12    sentencing guidelines?

13    THE DEFENDANT:  I do.

14    THE COURT:  Which I'm sure Mr. Abramowitz

15    explained to you, and which you know of your own

16    knowledge?

17    THE DEFENDANT:  I do, your Honor.

18    THE COURT:  And that would be the zero to six

19    months.  I must consider them, seriously consider them.

20    It's not a casual consideration.

21    THE DEFENDANT:  I understand.

22    THE COURT:  Judge Newman stated in U.S. against

23    Crosby they must be seriously considered.  But I'm not

24    bound by them.

25    Do you understand that?

1    THE DEFENDANT: I do understand that, sir.

2    THE COURT: I generally include an explanation

3  of the federal sentencing guidelines by a commentator of

4  the New York Times who wrote an article about it right

5  after the guidelines were enacted, and he said that the

6  federal guidelines create a point system, that add and

7  subtract mitigating and aggravating circumstances

8  depending upon an individual's conduct and the

9  circumstances in the case.

10    I don't have to explain them further to you

11  because I know you understand what the sentencing

12  guidelines are.

13    Correct?

14    THE DEFENDANT: I do, your Honor.

15    THE COURT: Now, in this plea agreement it

16  states that "the office estimates the likely adjusted

17  offense level under the guidelines to be level seven," and

18  then they set forth how they determine that, and then the

19  plea agreement continues on page three: "This level

20  carries a range of imprisonment of zero to six months,

21  assuming that the defendant falls within criminal history

22  category I."

23    Whatever the government tells you, whatever is

24  signed on this agreement doesn't bind the Court. I can

25  determine that the total offense level is much higher or

1  lower than that.  This is not in any way binding on the

2  Court.

3          Do you understand that?

4          THE DEFENDANT:  I do.

5          THE COURT:  And when you get the presentence

6  report several months down the road and you find perhaps

7  that the total offense level is higher, it's 40 to

8  60 months, let's say, you will not be a very happy person.

9  But one thing that you won't be able to do is withdraw

10  your guilty plea because of that.  So it's -- it's

11  uncertain what the guidelines will be.  You don't know

12  what the guidelines are, notwithstanding what the

13  government on your attorney and you agreed upon.  Is that

14  clear?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  So that your plea that you make now

17  is going to be binding, no matter what the guidelines are

18  as determined by the probation department recommendation

19  and finally, by me.

20          Do you understand that?

21          THE DEFENDANT:  Yes, sir.

22          MR. ABRAMOWITZ:  Your Honor, in that connection,

23  you should be aware that I've discussed with the

24  government the fact that we are going to be raising

25  arguments that would make the offense level of seven

```
 1   lower; that we have arguments to raise at the time of
 2   sentence that make that number lower.
 3              THE COURT:  Absolute right.  You have an
 4   absolute right to do that.  You have a right to show that
 5   it's not zero to six, it's probation.  I think there is
 6   probation under the level seven.  Is there?
 7              MR. BODE:  Yes.
 8              MR. ABRAMOWITZ:  Yes.
 9              THE COURT:  I think there is.
10              MR. ABRAMOWITZ:  Yes.
11              THE COURT:  Okay.  Of course you can show that
12   it's lower.  If I think that you're right, that's what it
13   will be.  But I can also find that it's higher.
14              MR. ABRAMOWITZ:  I understand.
15              THE COURT:  You understand that, Ms. Amsterdam?
16              THE DEFENDANT:  I do, your Honor.
17              THE COURT:  And although you might be very
18   disappointed to hear that, you're not going to be able to
19   withdraw your plea in the future because of that.  You
20   understand that?
21              THE DEFENDANT:  I understand the plea is
22   binding, yes, your Honor.
23              THE COURT:  Now, I alluded to the United States
24   against Booker, a very important case.  Under this recent
25   Supreme Court decision as I told you, the guideline
```

1 sentencing range is not mandatory. In other words, I must

2 seriously consider the guideline range, but I am not

3 compelled to sentence you within that range.

4 After considering the sentencing guideline

5 range, I must consider all the other factors in the case.

6 Among that, very importantly, is Section 3553(a) of Title

7 18, and I must consider the statutory reasons for

8 sentencing, including: One, the nature and circumstances

9 of the offense and the history and characteristics of the

10 defendant; two, the need for the sentence imposed, A, to

11 reflect the seriousness of the offense, B, to promote

12 respect for the law, and; C, to provide just punishment

13 for the offense; three, the need to afford deterrence as

14 to other criminal conduct; and, four, the need to protect

15 the public from further crimes of the defendant.

16 After I consider the guidelines, the statutory

17 reasons for sentencing, and any other circumstances that

18 your attorney or the government brings to my attention,

19 then I must determine a sentence that is "reasonable"

20 after considering all of those factors. Do you understand

21 all of that?

22 THE DEFENDANT: Yes, sir.

23 THE COURT: Now, Ms. Amsterdam, you will have to

24 report to the probation officer who will ask you questions

25 about your entire life from the time that you were born

1    with regard to any criminal history, your employment,

2    marriages, divorces, children, sickness, military service,

3    charitable work, religious activities, and everything else

4    in your life.  Then the probation department will give me

5    a presentence report.  In that report they will review the

6    sentencing guidelines and all the factors, and will

7    recommend to me a point level and a sentencing range

8    which, of course, is not mandatory, but which I must

9    consider.

10          You also will get a copy of that presentence

11   report and your attorneys will, and they will have an

12   opportunity, you and them, to advise me that they do not

13   agree with certain parts of the presentence report and as

14   Mr. Abramowitz said, he's going to contend that the total

15   offense level, for example, should be lower.  But I'm

16   telling you now, and I emphasize, no one knows what the

17   guideline recommendation will be.  No one knows at this

18   point what a reasonable sentence will be.

19          So if you want to avoid uncertainty, don't plead

20   guilty.  Now, what do you want to do?

21          THE DEFENDANT:  I'm going to enter a plea of

22   guilty, your Honor.

23          THE COURT:  Now, before I impose sentence, as I

24   advised you, we will receive these presentence reports,

25   and as I told you, if you think that it's mistaken, when I

1    say you, you and your lawyers, or incomplete in any way,

2    you will have the opportunity to bring that to by

3    attention.

4              Do you understand that?

5              THE DEFENDANT: Yes, sir.

6              THE COURT: Now, at the time of sentencing, your

7    fine attorney will have a recommendation to me, I'm sure.

8    And perhaps the prosecutor may make a recommendation, I

9    doubt it, because they've already said in the plea

10   agreement that they're going to stick with that, and they

11   rarely make recommendations.

12             You understand that?

13             THE DEFENDANT: I do.

14             THE COURT: I will, of course, listen carefully

15   to whatever everybody says, but you must fully understand

16   that the final responsibility for sentencing you is mine

17   alone, and while I may be persuaded by the attorneys, I

18   may also view the case differently and not impose a

19   sentence they recommend. I may impose a higher one. No

20   one can promise you what sentence the Court will impose.

21   Is that clear?

22             THE DEFENDANT: I understand.

23             THE COURT: If, after I impose sentence, you or

24   your attorney think that I have not properly followed the

25   law in sentencing you, as I stated previously, if the

1    sentence is seven months or more, you can appeal your

2    sentence to a higher court and ask them to correct any

3    mistake I may have made.

4            Do you understand that?

5            THE DEFENDANT:  Yes, sir.

6            MR. ABRAMOWITZ:  I think that would be over six

7    months.

8            THE COURT:  When I used seven months, that's not

9    correct.  I'll now say six months and one day or above.

10           THE DEFENDANT:  I understand.

11           THE COURT:  Anytime I said seven months, let the

12   record be corrected immediately -- I'm just saying it.

13   Don't do anything.

14           Six months and one day or more.  Right.  Thanks

15   for bringing that to my attention.

16           Ms. Amsterdam, do you have any questions that

17   you would like to ask me about the charge, your rights,

18   the possible sentence, the federal sentencing guidelines,

19   the results of the Booker decision, what a reasonable

20   sentence may be, or anything else related to this matter

21   that may not be clear?

22           THE DEFENDANT:  No, your Honor.

23           THE COURT:  Mr. Abramowitz, is there anything

24   that you would like me to discuss with your client in

25   further detail?

1          MR. ABRAMOWITZ:  No, your Honor.

2          THE COURT:  Mr. Abramowitz, do you know of any

3     reason why your client should not enter a plea of guilty

4     to this charge?

5          MR. ABRAMOWITZ:  No, your Honor.

6          THE COURT:  Are you aware of any viable legal

7     defense to the charge?

8          MR. ABRAMOWITZ:  No, your Honor.

9          THE COURT:  Valerie Amsterdam, are you ready to

10    plead to Count One of the indictment?

11         THE DEFENDANT:  Yes, sir.

12         THE COURT:  How do you plead to the charge

13    contained in Count One of the indictment, guilty or not

14    guilty?

15         THE DEFENDANT:  Guilty, your Honor.

16         THE COURT:  Are you making this plea of guilty

17    voluntarily and of your own free will and accord?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  Has anyone threatened or forced you

20    to plead guilty?

21         THE DEFENDANT:  No, your Honor.

22         THE COURT:  Other than the agreement with the

23    government, has anyone made you any promise that caused

24    you to plead guilty?

25         THE DEFENDANT:  No, your Honor.

1           THE COURT:  Has anyone made you any promise

2    about the sentence that you will receive?

3           THE DEFENDANT:  No, your Honor.

4           THE COURT:  No one could make you such a

5    promise, because, as I advised you several times, I alone

6    will have to decide on the proper sentence in this case.

7    You understand that?

8           THE DEFENDANT:  I do.

9           THE COURT:  Ms. Amsterdam, will you describe

10   briefly in your own words what you did in connection with

11   the crime charged in Count One of the second Superseding

12   Indictment.

13          THE DEFENDANT:  Your Honor, my close friend and

14   colleague, Mr. John Jacobs, was assigned in the matter of

15   United States versus Susan Flynn pursuant to the Criminal

16   Justice Act.

17          THE COURT:  Susan Flynn?

18          THE DEFENDANT:  Flynn, F-L-Y-N-N.

19          (Continuing.)  And he was assigned pursuant to

20   the Criminal Justice Act which provides representation for

21   indigent defendants.

22          The case was referred to Judge Wexler, who was

23   the presiding judge.  In the months leading up to the

24   Flynn trial, Mr. Jacobs both sought my counsel and asked

25   if I would quote/unquote second seat him, if I would

1 | assist him in the preparation and trial of the case.

2 | Twice, with my knowledge, he made written

3 | requests to Judge Wexler asking that I be appointed as

4 | second counsel under the provisions of the Criminal

5 | Justice Act, complex case, and, with my knowledge, twice

6 | Judge Wexler refused Mr. Jacobs' request that I be

7 | assigned.

8 | At some point Mr. Jacobs believed it was a very

9 | complicated case, asked me to meet with the defendant's

10 | boyfriend, and I did, and the defendant's boyfriend

11 | offered me -- asked if I would assist Mr. Jacobs at the

12 | trial for a flat fee of $10,000, and I agreed to do so;

13 | regarded it as a complicated case. There were four

14 | psychiatrists that were going to be called.

15 | I did so really more out of friendship than out

16 | of money. I would have done it possibly for nothing if

17 | Mr. Jacobs had asked me to do so.

18 | In any event, this fee was not disclosed to

19 | Judge Wexler.

20 | THE COURT: Did you receive the fee of $10,000?

21 | THE DEFENDANT: I did.

22 | THE COURT: Did you deposit the checks?

23 | THE DEFENDANT: Yes, I absolutely did.

24 | Mr. Jacobs asked for me to be assigned, Judge

25 | Wexler refused, and neither Mr. Jacobs nor myself told

1  Judge Wexler that I had been hired by the defendant's

2  boyfriend.

3          Indeed, when we were in court the day of jury

4  selection, Judge Wexler made inquiry as to my presence at

5  this trial, and Mr. Jacobs indicated, and I, too,

6  indicated that I was appearing as pro bono.

7          That was an intentionally false statement.  I

8  knew that I had received a $10,000 fee from the

9  defendant's boyfriend.

10          I fully accept the consequences of my actions.

11  I most sincerely apologize to Judge Wexler, to this court,

12  to my family, to other colleagues, and specifically to

13  many judges in the Southern District in particular who

14  have been so supportive to me, both in terms of being a

15  measurement for me and would embrace their faith and

16  confidence in me.

17          I understand that I have disgraced myself and

18  that I have disgraced my profession.  I've injured my

19  children.  I've injured my family.  And most significant

20  to me, I squandered my professional gifts, ruined my

21  reputation and career.  And I am deeply ashamed, very

22  remorseful, and accept full responsibility for my conduct.

23          THE COURT:  And in court when Judge Wexler

24  stated to you, "you are not co-counsel," you said, "I'm

25  not being paid, your Honor, I'm co-counsel."

1    Correct?

2    THE DEFENDANT:  That's correct, your Honor.

3    THE COURT:  You knew that was intended to

4    deceive Judge Wexler?

5    THE DEFENDANT:  That is correct, your Honor.

6    THE COURT:  Anything else, Ms. Amsterdam?

7    MR. ABRAMOWITZ:  Ms. Monaco.

8    THE COURT:  I'm sorry, Ms. Monaco.

9    MS. MONACO:  Your Honor, there are just two

10    small factual distinctions that the government's proof has

11    with what Ms. Amsterdam stated.  I don't think it goes to

12    the heart of her allocution, but I would just like to put

13    before the Court.

14    THE COURT:  Go ahead.  You can add anything that

15    you want to add.

16    MS. MONACO:  The government's evidence is that

17    Mr. Jacobs was not appointed pursuant to the Criminal

18    Justice Act.  His wife was appointed to represent Susan

19    Flynn pursuant to the Criminal Justice Act, and Mr. Jacobs

20    just began make the appearances on Ms. Seltzer's behalf.

21    I don't think that affects Ms. Amsterdam's plea

22    allocution.  It's just a small factual --

23    THE COURT:  If that's what happened, you want it

24    to be accurate.

25    MS. MONACO:  Yes, your Honor.

1          The second point is I think Ms. Amsterdam

2    indicated Mr. Jacobs asked her to represent someone,

3    Ms. Flynn as co-counsel for a flat fee of $10,000.

4          The government's evidence would be that

5    Ms. Amsterdam first asked Ms. Flynn's boyfriend to pay her

6    $15,000 and that fee was negotiated down to $10,000.

7    Again, I don't think that's a distinction that affects the

8    allocution. I just wanted to point out that we had a

9    small factual dispute there.

10         THE DEFENDANT: If I might just clarify for

11   your Honor. As far as I knew, Mr. Jacobs was always the

12   assigned counsel. I know a question was raised as to

13   whether or not the assignment had gone to his wife,

14   Ms. Marion Seltzer.

15         It had been my belief -- and I could be in

16   error, but it had been my belief that it had been

17   Mr. Jacobs quote/unquote duty day, and that he had been on

18   trial if an unrelated matter, that Ms. Seltzer had covered

19   the case for him, but that it was in fact his appropriate

20   assignment.

21         Throughout the pendency of the case, which I

22   think went on for almost two years, I always believed,

23   right up until the day we appeared for trial, that it was

24   Mr. Jacobs who was assigned counsel.

25         I don't quarrel with what the government's

1    evidence is.  I'm just telling your Honor that I always

2    believed and was always told that Mr. Jacobs was the

3    attorney of record.

4           As to regarding the fee, I would indicate to the

5    Court that Mr. Jacobs, over an extended period of time,

6    almost over a year, had asked me to second seat the case

7    with him.  The allegations regarded child pornography and

8    pedophilia, and I had refused throughout the entire time.

9    Mr. Jacobs brought the boyfriend and had a meeting at

10   which Mr. Jacobs and his associate, Ms. Plaumann.

11          THE COURT:  Miss who?

12          THE DEFENDANT:  Miss Stephanie Plaumann,

13   P-L-A-U-M-A-N-N were present, and I don't remember,

14   Ms. Monaco may very well be correct that originally a fee

15   of $15,000 was discussed and it was negotiated to $10,000.

16   I don't take issue with that.  I don't remember to tell

17   you the truth, your Honor.

18          I'm just saying to your Honor that Mr. Jacobs

19   initiated bringing the boyfriend in to meet me, he

20   referred me, and urged the boyfriend to hire me.  I think

21   that Mr. -- the boyfriend was also paying some of the

22   expert fees and was also paying the investigator.

23          Regardless, it does noting, nothing to justify

24   or equivocate my statement that I knew that Mr. Jacobs had

25   asked for me to be assigned co-counsel.  I knew that Judge

1  Wexler had refused that request.  I stood in court when

2  Mr. Jacobs indicated that I was pro se.  I absolutely

3  stated to Judge Wexler that I was appearing without

4  compensation.

5        Those statements were intentionally false.

6        THE COURT:  Anything else Ms. Monaco.

7        MS. MONACO:  No, your Honor.

8        THE COURT:  Based upon the information given to

9  me, I find that the defendant Valerie Amsterdam is acting

10  voluntarily, and she fully understands the charge, her

11  rights, and the consequences of her plea.  There is,

12  moreover, a factual basis for the plea.

13        I therefore accept the plea of guilty to Count

14  One of the second Superseding Indictment.

15        Ms. Amsterdam, you will be interviewed by the

16  probation officer assigned to this case.  You are directed

17  to cooperate fully with the probation officer, to help

18  ensure the speedy production of the presentence report.

19  What are the bail conditions?

20        MR. ABRAMOWITZ:  Your Honor, the bail conditions

21  were $250,000 secured by the house.  The house is about to

22  be sold Friday.  So I would ask --

23        THE COURT:  Is that the house that's going to be

24  held for the forfeiture?

25        MR. ABRAMOWITZ:  That's correct.

1    So I would ask that she be released on her own

2  recognizance or a personal recognizance bond of the 250,

3  but not secured by any amount.

4    THE COURT:  Any objection?

5    MS. MONACO:  I'm sorry, your Honor.  Could I

6  just have a moment?  (Pause.)

7    Your Honor, Mr. Bode informs me that the terms

8  of the agreement he and Mr. Albert, Ms. Amsterdam's other

9  counsel, made, were that $150,000 would be maintained in

10  the escrow account of Mr. Abramowitz' law firm as security

11  for bail.

12    MR. ABRAMOWITZ:  But that was at a time,

13  your Honor, before the plea negotiations when we were just

14  talking about the sale of the house, and what to do about

15  the satisfaction of bail.

16    THE COURT:  But the money is going to be given

17  to the government anyway.

18    MR. ABRAMOWITZ:  Not all the money.

19    THE COURT:  Not all of it.  300 whatever.

20    MR. ABRAMOWITZ:  374,000.

21    THE COURT:  So the house is going to be sold for

22  more than that.

23    MR. ABRAMOWITZ:  Correct.

24    MS. MONACO:  The house is going to be sold for

25  $4.2 million.  The discussion between Mr. Bode and

1   Mr. Albert was today.

2           THE DEFENDANT:  Your Honor, I have no objection.

3   If Mr. Abramowitz' firm can hold it in escrow, I will post

4   the $150,000 with their firm.

5           THE COURT:  All right.

6           MR. ABRAMOWITZ:  Okay.

7           THE COURT:  Okay.

8           So you will within the ten days of the time of

9   the sale, deposit 150,000.

10          THE DEFENDANT:  It is my understanding that --

11  the agent in this case was gracious enough to say that

12  he'll be at the closing on Friday, and it is our intention

13  to close on the house and to directly issue a bank check

14  to the government and that at the same time --

15          THE COURT:  You'll give the 150,000.

16          THE DEFENDANT:  The $150,000 fine will be turned

17  over.

18          THE COURT:  I'll fix that as bail.

19          Anything else?

20          Ms. Monaco, anything else?

21          MS. MONACO:  No, your Honor.

22          THE COURT:  Mr. Abramowitz.

23          MR. ABRAMOWITZ:  No, your Honor.

24          THE COURT:  This sentence will take place on

25  July 8, 2005, at 10:30 a.m.

This plea allocution is terminated.

MR. ABRAMOWITZ:  Thank you, your Honor.

MR. BODE:  Thank you, your Honor.

THE DEFENDANT:  Thank you, your Honor.


(Matter concluded.)

# MORVILLO, ABRAMOWITZ, GRAND, IASON & SILBERBERG, P. C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO
LAWRENCE S. BADER
BARRY A. BOHRER
CATHERINE M. FOTI
PAUL R. GRAND
LAWRENCE IASON
ROBERT G. MORVILLO
BARBARA MOSES†
JODI MISHER PEIKIN
JONATHAN S. SACK††
EDWARD M. SPIRO
JEREMY H. TEMKIN
JOHN J. TIGUE, JR.
CYRUS R. VANCE, JR.

COUNSEL
CHRISTOPHER J. MORVILLO
GREGORY MORVILLO
†ALSO ADMITTED IN CALIFORNIA AND B.C.
††ALSO ADMITTED IN CONNECTICUT

MICHAEL C. SILBERBERG
1940-2002

565 FIFTH AVENUE
NEW YORK, N.Y. 10017
TELEPHONE
(212) 856-9600
www.maglslaw.com
FACSIMILE
(212) 856-9494

WRITER'S DIRECT DIAL
(212) 880-9500

DAVID C. AUSTIN
BARBARA L. BALTER
CHRISTOPHER A BOTSMAN
KATHRYN JONES CALDNE
BENJAMIN S. FISCHER
ADAM C. FORD
NOAH D. GENEL
RENÉE L. JARUSINSKY
STEPHEN M. JUE
THOMAS M. KEANE
ELLEN T. MURPHY
MICHAEL H. PINE
JOHN RIZ C. HAMILTON
ASHLEY E. FLPP
ANDREW J. SCHELL
KATHRYN SPOTA
JERROLD L. STEIGMAN
JAMES R. STOVALL
RICHARD D. TARLOWE
AMY M. TULLY
KRISTY WATSON
KEFIRA R. WILDERMAN

December 12, 2005

<u>Via Facsimile and United States Mail</u>

The Honorable Arthur D. Spatt
United States District Judge
United States District Court
Eastern District of New York
1024 Federal Plaza
Central Islip, New York 11722

Re:   *United States v. Valerie Amsterdam*
      04 CR 384 (ADS)

Dear Judge Spatt:

   In anticipation of the parties' conference with the Court scheduled for Wednesday December 14, 2005 at 9:00 am, we write to request that the Court modify the conditions of Ms. Amsterdam's release to permit her to travel to Ethiopia in mid-January with Save The Children, as set forth in the attached letter from Ms. Amsterdam. We have conferred with the government, and the government has informed us that it takes no position on this request.

   We will shortly be submitting a separate letter to the Court addressing certain issues raised at the parties' last court appearance.

MORVILLO, ABRAMOWITZ, GRAND, IASON & SILBERBERG, P. C.

The Honorable Arthur D. Spatt
December 12, 2005
Page 2

Thank you for your consideration of this request.

Respectfully submitted,

Elkan Abramowitz

cc:    Allen Bode, Esq.
       Cynthia Monaco, Esq.